UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| RODNEY KILGORE & | ) | |
| WILLIAM KILGORE | ) | |
| | ) | Case No. 1:16-cv-340 |
| *Plaintiffs*, | ) | |
| | ) | Judges Mattice/Steger |
| v. | ) | |
| | ) | |
| JOHNNY HUNTER, | ) | |
| DANIEL RUSKEY, and | ) | |
| JOHNNY MCBEE, | ) | |
| | ) | |
| *Defendants*. | ) | |

## REPORT & RECOMMENDATION

Following entry of summary judgment [Doc. 165] in favor of Defendants, the Tennessee Attorney General's Office, on behalf of the prevailing parties, filed a motion for attorney fees [Doc. 170] seeking to recover the fees incurred in connection with the defense of this lawsuit. More specifically, Defendants request an award of attorney fees in the amount of $10,850. At issue is whether Defendants are entitled to such fees under 42 U.S.C. § 1988 and 28 U.S.C. § 1927. For reasons that follow, the undersigned will **RECOMMEND** that the motion for attorney fees [Doc. 170] be **DENIED**.

I.  Facts

Each of the plaintiffs, Rodney and William Kilgore, owns and operates a tow truck company. The three defendants in this case are Tennessee Highway Patrol ("THP") officers. THP officers are often the first responders to a vehicle accident. Consequently, they are frequently responsible for calling a tow truck to remove a damaged vehicle from an accident scene. The THP maintains a "rotation list" identifying reliable tow truck companies eligible to receive

1

these assignments. The rotation list is used to assure an equitable distribution of assignments to the various eligible tow truck companies—i.e., as each company receives a towing assignment it then rotates to the bottom of the list. Tow truck companies must apply to be added to the THP's rotation list. The tow truck companies owned by Rodney Kilgore and William Kilgore, respectively, were both on the list. Or, at least they were until the Kilgores filed suit in *Adair, et al. v. Hunter, et al.,* E.D. Tenn. Civil Case No. 1:16-cv-3 (the "*Adair* lawsuit"). In the *Adair* lawsuit, the Kilgores asserted claims of retaliation and denial of equal protection against several employees of the THP as a result of their tow truck companies being temporarily removed from the rotation list in 2013.

After the Kilgores filed the *Adair* lawsuit, the Kilgores' tow truck companies were again removed from the rotation list. As a result, the Kilgores initiated the instant lawsuit, claiming that THP officers Hunter, Ruskey, and McBee retaliated against them for filing the *Adair* lawsuit. More specifically, the Kilgores claimed that Defendants violated their First Amendment rights as well as their right to access the courts. Defendants denied liability and moved for summary judgment, asserting the defense of qualified immunity and arguing that the Kilgores had failed to establish a *prima facie* case.

The District Court granted summary judgment [Doc. 165] in favor of Defendants and dismissed the case with prejudice. In its analysis, the Court noted that the Kilgores had to prove the following to go to trial on their First Amendment retaliation claims:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

[Doc. 165 at PageID #2018–19 (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)].

2

The Court determined that the filing of a lawsuit constituted a protected activity under the First Amendment; therefore, the Kilgores met the first prong of the test. The Court further determined, however, that the Kilgores could not meet the remaining two prongs of the test (i.e., "adverse action" and "causal connection").

By way of background, William Kilgore contended that he was wrongfully denied a towing assignment in June 2016. Following a tractor-trailer crash on Interstate 40, the THP utilized the rotation list and called William Kilgore's towing company to the scene. Traffic was heavy due to a nearby music festival, so the THP pulled the vehicle to the side of the road until traffic cleared, giving William Kilgore's towing company a few days' latitude to tow the disabled vehicle. Kilgore claimed that Officer Hunter blocked his company from getting the towing assignment by directing the work to a competitor, Ikard Towing. William Kilgore asserted that he was notified, only after the disabled vehicle had been towed, that the vehicle's owners had requested Ikard Towing to haul off the wreckage.

To counter Kilgore's allegations, Defendants relied upon the testimony of Jason Ikard of Ikard Towing. Ikard testified that he learned of the vehicle accident through Facebook and that he contacted the company that owned the disabled vehicle to obtain the towing job. The Court rejected the Kilgores' claim that this incident established a causal link between the filing of the *Adair* lawsuit and the denial of towing work. In other words, the Court held that the Kilgores failed to demonstrate that there was anything retaliatory about Ikard Towing getting this towing job rather than Kilgore's company.

The Kilgores also raised a claim that Rodney Kilgore was retaliated against when his towing company was temporarily suspended from the rotation list in 2016. Concerning that claim, the Court found the following:

3

- In March 2016, the THP used the rotation list to contact Rodney Kilgore's towing company to tow Shasta Gerhart's vehicle after it broke down on Interstate 24.

- During the tow, one of Gearhart's passengers videoed Rodney Kilgore using and looking down at his cell phone while driving the tow truck. As a result, Gearhart filed a formal complaint against Kilgore with the THP.

- THP Officer Ruskey investigated the complaint and found that Kilgore violated several state and federal codes. He recommended to his supervisor, Officer McBee, that Kilgore be removed from the rotation list for 30 days. McBee concurred with the recommendation and issued a letter to Rodney Kilgore, explaining the violations and punishment.

- Kilgore appealed, and THP District Captain R.C. Christian overturned Kilgore's violations and reinstated him to the rotation list.

Defendants conceded that removal from the rotation list constituted an adverse action; however, the Court held that Plaintiffs failed to establish a causal connection between the filing of the *Adair* lawsuit and the decision to temporarily remove Kilgore from the rotation list. To the contrary, the uncontroverted evidence established that the removal decision was prompted solely by Gearhart's bona fide complaints concerning Kilgore's cell phone use while driving the tow truck.

Finally, the Kilgores alleged that the THP officers harassed them after they filed the *Adair* lawsuit, even to the point of forcing Rodney Kilgore to close down one of his tow truck locations in Grundy County, Tennessee. The Court rejected this argument as well, holding that the Kilgores failed to prove that the alleged harassment rose to the level of an adverse action (more specifically, the "most that can be gleaned from Kilgore's allegations is that, following a lawsuit filed against Defendant Hunter, Hunter's attorneys and their employees investigated the claims enumerated in Kilgore's lawsuit by observing him and his business on a handful of occasions") [*Id.* at PageID #: 2040].

As a result, the Court granted summary judgment in favor of Defendants on all issues.

Defendants now request that the Court award them $10,850.00 in attorney fees under 42 U.S.C. § 1988 and 28 U.S.C. § 1927. In making this request, they contend that the Kilgores' First Amendment retaliation claims were "frivolous, unreasonable, or without foundation." [Doc. 170 at PageID #: 2062]. Defendants also request that the fees awarded be recoverable from the Kilgores' attorneys because: (1) they "should have known that [the] [Kilgores] had no evidence beyond a metaphysical doubt to support their claims of retaliation or to overcome Defendants' evidence that they acted reasonably and according to proper motives" [*Id.*]; and (2) because the Kilgores' counsel continued to take positions when it was "well beyond the point at which it should have been apparent that the claims lacked merit." [Doc. 171 at PageID #: 2272].

**II.     Legal Analysis**

    **A.     Defendants' motion for attorney fees is timely**

The Kilgores responded to Defendants' motion for attorney fees by stating that the motion was not timely because it was outside the 30-day window under Local Rule 54.2. *See* E.D.T.N. LR 54.2 "[A] motion for attorneys' fees . . . must be filed no later than 30 days after entry of judgment. If a motion for attorneys' fees . . . is not filed within 30 days, such fees and expenses shall be waived . . . ."). The district court entered summary judgment on June 28, 2018. Defendants' motion for attorney fees was not filed until 32 days later; however, the 30-day deadline fell on Saturday, July 28, 2018. Under Fed. R. Civ. P. 6(a)(1)(C), "if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Therefore, the motion, which was filed on Monday, July 30, 2018, was timely. *See* E.D.T.N. LR 1.1 ("These rules supersede all previous rules promulgated by this Court . . . and supplement the Federal Rules of Civil Procedure . . . and shall be construed so as to be consistent with those rules and to promote the just, efficient, and

5

economical determination of every action and proceeding.").

### B. Standard for Awarding Attorney Fees to Defendant under 42 U.S.C. § 1988

The statute under which Defendants claim attorney fees, 42 U.S.C. § 1988, provides that "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . ." 42 U.S.C. § 1988(b); *Wolfe v. Perry*, 412 F.3d 707, 720 (6th Cir. 2005). "[W]hile prevailing plaintiffs are entitled to attorney's fees under th[e] statute in all but special circumstances, prevailing defendants are entitled to attorney's fees much less frequently." *Smith v. Smythe-Cramer Co.*, 754 F.2d 180, 182 (6th Cir. 195) (citing *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 417-18 (1978). In considering an award for attorney fees against a non-prevailing plaintiff under § 1988, the Court notes that such an award constitutes "an extreme sanction, and must be limited to truly egregious cases of misconduct." *Jones v. Cont'l Corp.*, 789 F.2d 1225, 1232 (6th Cir. 1986). In fact, a defendant may recover attorney fees from the plaintiff "only if the District Court finds 'that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in bad faith.'" *Hughes v. Rowe*, 449 U.S. 5, 14 (1980) (quoting *Christiansburg*, 434 U.S. at 421)).

Defendants' request for attorney fees fails to meet that standard in this case. To determine if a suit is frivolous, courts must consider "whether the issue is one of first impression requiring judicial resolution, whether the controversy is sufficiently based upon a real threat of injury to the plaintiff, whether the trial court has made a finding that the suit was frivolous under the *Christiansburg* guidelines and whether the record would support such a finding." *Tarter v. Raybuck*, 742 F.2d 977, 986 (6th Cir.1984) (quoting *Reichenberger v. Pritchard*, 660 F.2d 280, 288 (7th Cir.1981) (citations omitted)). It is worth noting that, in his summary-judgment opinion, District Judge Mattice did not explicitly state that the Kilgores' First Amendment retaliation claims

6

were "frivolous, unreasonable, or without foundation . . . ." *Id.*

Further, the record does not support a finding that Plaintiffs' claims are frivolous. *See Christiansburg*, 434 U.S. at 417–18. In reviewing the record, the Court will not "engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Id.* at 421–22. Although Plaintiffs did not prevail in response to Defendants' summary-judgment motion, the Court cannot say that their claims were completely unreasonable or without foundation. As such, based on the high standard for awarding attorney fees to prevailing defendants, the Court **RECOMMENDS** that Defendants are not entitled to attorney fees under 42 U.S.C. § 1988.[1]

### C. Standard for Awarding Attorney Fees to Defendant under 28 U.S.C. § 1927

Defendants are also not entitled to fees based on the conduct of the Kilgores' attorneys. Under 28 U.S.C. § 1927, "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "The purpose of § 1927 is to deter dilatory litigation practices and punish aggressive tactics that far exceed zealous advocacy." *Garner v. Cuyahoga Cnty. Juvenile Ct.*, 554 F.3d 624, 644 (6th Cir. 2009) (internal quotations omitted). "A court may sanction an attorney under § 1927 . . . when the 'attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her

---

[1] *See Riddle v. Egensperger*, 266 F.3d 542, 551 (6th Cir. 2001) ("A plaintiff who continues to litigate claims after discovery has concluded, proceeds to summary judgment, and a judge thereafter rules that the claims are without merit, does not necessarily support the conclusion that the plaintiff's claims were frivolous, unreasonable, or groundless, especially if there are viable claims intertwined to the meritless claims. Even though the claims after discovery are found to be without merit by a court, such a finding does not equate with a determination that the claims were without foundation when the complaint was initially filed.").

7

litigation tactics will needlessly obstruct the litigation of nonfrivolous claims.'" *Gibson v. Solideal USA, Inc.*, 489 Fed. Appx 24, 31 (6th Cir. 2012) (quoting *Hall v. Liberty Life Assurance Co. of Boston*, 595 F.3d 270, 275-76 (6th Cir. 2010)). Viewed as an objective standard, there must be some conduct on the part of the attorney that "falls short of the obligations owed by a member of the bar to the court and which . . . causes additional expense to the opposing party." *Rentz v. Dynasty Apparel Indus.*, 556 F.3d 389, 396 (6th Cir. 2009).

Defendants claim that the Kilgores' counsel should have known that their claims were frivolous because the Kilgores were unable to testify to facts that established a causal connection between the *Adair* lawsuit and the adverse actions complained of. The Court notes, however, that the Kilgores' lack of knowledge about specific retaliatory acts does not prove that such acts did not occur. The Kilgores relied upon circumstantial evidence of retaliation when they filed their lawsuit. The missing pieces of the puzzle that they hoped to find through discovery never materialized. An award of attorney fees under § 1927 contemplates misconduct that goes beyond the bounds of routine litigation tactics. The Court does not perceive that such misconduct occurred here. Consequently, there is no basis to award attorney fees under 28 U.S.C. § 1927.

**III. Conclusion**

Although Defendants prevailed on summary judgment, it does not appear to the Court that Plaintiffs' claims were frivolous or that their attorneys acted vexatiously. *Christiansburg*, 434 U.S. at 422 ("Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.") Defendants' request for attorney fees does not meet the high standard established for awarding attorney fees to a prevailing defendant in a civil rights case. Therefore, the undersigned **RECOMMENDS** that Defendants' Motion for Attorney Fees [Doc. 170] be **DENIED.**

**ENTER.**

_____
CHRISTOPHER H. STEGER
UNITED STATES MAGISTRATE JUDGE

9